## CIRCUIT COURT OF CAROLINE COUNTY

C. W. Jackson Hauling, Inc.

v.

Southern Eagle etc.

August 3, 1988

Case Nos. L88-000064, L88-000065, L88-000066

**By JUDGE WILLIAM H. LEDBETTER, JR.**

These three garnishment proceedings were instituted by Jackson against Southern Eagle and three suggested garnishees on a judgment obtained by Jackson against Southern Eagle on September 2, 1987. The garnishments were filed on June 15, 1988. All of the garnishees have acknowledged that they hold funds belonging to Southern Eagle.

Crestar Bank filed a motion to intervene in these proceedings, asserting a superior interest in the funds by virtue of a security agreement between Southern Eagle and United Virginia Bank (Crestar's predecessor) dated August 19, 1985. Financing statements perfecting the security interest were filed in the clerk's office of the State Corporation Commission on August 20, 1985, and in the clerk's office of this court on August 23, 1985.

A hearing was conducted on the return date of the garnishment summons, July 13, 1988. Thereafter, counsel submitted memoranda.

Certain facts have been stipulated. First, the indebtedness that the financing statements secure is not in default. Second, neither party attacks the validity of

the other's lien or the underlying obligations which their respective liens secure.

Therefore, the question before the court is the priority of these liens.

The security agreement between Southern Eagle and Crestar expressly creates a "continuing lien and security interest" in Southern Eagle's accounts receivable, "now existing or arising in the future." The financing statements describe the collateral as including Southern Eagle's "present and future . . . accounts receivable" and "the products and proceeds" of such accounts receivable.

The Uniform Commercial Code permits the creation of a security interest in accounts receivable, and such transactions are governed by Article 9 of the UCC. *See, e.g.*, Virginia Code § 8.9-102; § 8.9-106; § 8.9-401(1)(a). A security interest attaches to an account receivable, under a valid security agreement, when the account comes into existence. § 8.9-204(2)(d). Further, the security agreement may provide that the security interest attaches to after-acquired receivables. § 8.9-204(3). This statutory provision is often referred to as recognition of a "continuing general lien" on collateral, whenever acquired by the debtor.

Priorities among conflicting liens against the same collateral are governed in cases of this nature by Section 8.9-312. Where the conflict is between perfected liens, such conflicting liens "rank according to priority in time of filing or perfection." § 8.9-312(5)(a). A lien creditor, meaning a creditor who has acquired a lien on the collateral (including a judgment lien), takes subject to a prior perfected security interest (at least to the extent of advances made by the superior lienor to the debtor before the inferior lienor became a lien creditor). Section 8.9-301(4).

Jackson takes the position that as long as the obligation of Southern Eagle to Crestar is not in default, Crestar is not entitled to collect from Southern Eagle's account debtors. Therefore, Jackson says, Crestar's lien is not applicable to these funds.

Jackson's argument is wide of the mark. Article 9 of the UCC is divided into five parts. Part 5, relied upon by Jackson, describes the rights of a secured creditor in the event of default by the debtor. Part 3, on the other hand, governs rights of third parties and sets forth

the rules of priorities. Therefore, if this were a dispute between Crestar and Southern Eagle regarding Crestar's right to collect its indebtedness from these funds, one of the critical issues would be whether Southern Eagle had defaulted on its obligation to Crestar thereby giving Crestar the right to proceed against the collateral. However, Crestar is not attempting to proceed against the collateral, at least in this proceeding. Rather, it is attempting to *protect* its collateral against the claim of another lien claimant.

In this regard, the rules of the UCC are similar to those that apply to real estate liens. For example, if Crestar held a deed of trust on land owned by Southern Eagle, and Jackson sought to sell the land to satisfy its judgment against Southern Eagle, the judgment having been docketed subsequent to Crestar's recorded deed of trust, it is elementary that Crestar's lien would have priority. Whether the deed of trust was in default would be irrelevant. The same principle applies here.

In sum, Crestar's perfected security interest expressly covers these receivables of its debtor; and, its interest being prior in time to Southern Eagle's judgment lien, its interest constitutes a prior lien on these funds.

Jackson next argues that Crestar has lost or waived its lien priority by permitting Southern Eagle to collect and use its accounts receivable. The statutory provisions cited for this proposition are inapposite.

Virginia Code § 8.9-205 provides that a security interest is not invalid against creditors by reason of liberty in the debtor to use, commingle or dispose of the collateral, or to collect or compromise accounts, or to use, commingle or dispose of proceeds. This section rejects the "policing" requirement which some authorities had found implicit in *Benedict v. Ratner*, 268 U.S. 353, a 1925 U. S. Supreme Court decision authored by Justice Brandeis. The Official Comment to § 8.9-205 states that the Article expressly validates the concept of a "floating charge or lien."

For the reasons explained above, it is the opinion of the court that Crestar's security interest, perfected in 1985, is superior to Jackson's judgment lien against the same collateral. Accordingly, Jackson's garnishments of these funds, three receivables belonging to Southern

Eagle, are subject to Crestar's prior interest to the extent of the unpaid balance due on Southern Eagle's indebtedness to Crestar.